INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE &
AGRICULTURAL IMPLEMENT WORKERS OF AMERICA v
CENTRAL MICHIGAN UNIVERSITY TRUSTEES

Docket No. 299785. Submitted November 2, 2011, at Lansing. Decided
February 28, 2012, at 9:00 a.m.

The International Union, United Automobile, Aerospace & Agri-
cultural Implement Workers of America and UAW Local 6888
filed an action in the Isabella Circuit Court against the Central
Michigan University (CMU) Trustees and the Central Michigan
University President, challenging policies and procedures re-
garding university employees' candidacy for public office. The
trustees had adopted a policy regarding the political candidacy
of employees in December 2008, and the president had issued a
draft of proposed procedures implementing the candidacy policy
in March 2009. As the collective-bargaining representative for
office professional employees at CMU, plaintiffs filed the com-
plaint on behalf of their members employed by the university,
arguing that the candidacy policy and proposed procedures
violated the Political Activities by Public Employees Act, MCL
15.401 through MCL 15.407. The court, Paul H. Chamberlain,
J., denied plaintiffs' motion for summary disposition and their
request for declaratory and injunctive relief. It granted sum-
mary disposition in favor of defendants pursuant to MCR
2.116(C)(5) (lack of standing), concluding that the union mem-
bers lacked standing to sue because no employee had suffered a
particular injury because no employee had attempted to become
a candidate since the candidacy policy was implemented. The
court also granted summary disposition in favor of defendants
pursuant to MCR 2.116(C)(10) (no genuine issue of material
fact), concluding that the candidacy policy and draft procedures
did not violate the act because they only regulated political
activities that interfered with work responsibilities and did not
regulate political content, activity, or the views of employees.
Plaintiffs appealed and defendants cross-appealed, but the
cross-appeal was dismissed by stipulation of the parties after
oral argument.

The Court of Appeals *held*:

1. The purpose of a declaratory judgment is to enable the parties to obtain adjudication of rights before an actual injury occurs, to settle a matter before it ripens into a violation of the law or a breach of contract, or to avoid multiplicity of actions by affording a remedy for declaring in expedient action the rights and obligations of all litigants. Standing to seek a declaratory judgment exists whenever a litigant meets the requirements of MCR 2.605. When a declaratory judgment is necessary to guide a plaintiff's future conduct in order to preserve legal rights, there is an actual controversy and a declaratory judgment may be issued under MCR 2.605(A)(1), and in those cases courts are not precluded from reaching issues before actual injuries or losses have occurred. To establish an "actual controversy" under the rule, a plaintiff must plead and prove facts that demonstrate an adverse interest necessitating the sharpening of the issues raised.

2. The trial court correctly determined that plaintiffs did not have standing to challenge the draft procedures relating to the candidacy policy because they were in draft form and had not been implemented. Any challenge would therefore have been speculative and hypothetical. However, the trial court erred by concluding that plaintiffs lacked standing to challenge the candidacy policy even though no university employee had attempted to become a candidate since its adoption. Plaintiffs presented an actual controversy regarding the scope of the university employee's rights under the act and the legitimacy of the candidacy policy. The university employees had a special and substantial interest that was different from that of the public at large in ensuring that defendants' policies did not violate their statutory rights under the act.

3. MCL 15.403 and MCL 15.404 permit a public employee to engage in partisan political activity except during those hours when that person is being compensated for the performance of that person's duties as a public employee. A public employer may regulate and even prohibit off-duty activity that adversely interferes with job performance, but the public employer may not completely curtail an employee's off-hours activity as a matter of policy simply because that activity may conceivably interfere with job performance; rather, it may only deal with the adequacy of job performance on a case-by-case basis. The trial court properly determined that the candidacy policy did not violate the act. It regulated only an employee's work and not his or her activities outside work. Under the policy, an employee must consult with university officials regarding any candidacy,

but only to ensure that the employee's work responsibilities will not be affected. Defendants had the authority to regulate on-duty political activity or deal with unsatisfactory job performance attributable to off-duty political activity. The trial court properly denied the declaratory and injunctive relief plaintiffs sought.

Affirmed in part and reversed in part.

1. ACTIONS — STANDING — DECLARATORY JUDGMENTS.

The purpose of a declaratory judgment is to enable the parties to obtain adjudication of rights before an actual injury occurs, to settle a matter before it ripens into a violation of the law or a breach of contract, or to avoid multiplicity of actions by affording a remedy for declaring in expedient action the rights and obligations of all litigants; standing to seek a declaratory judgment exists whenever a litigant meets the requirements of MCR 2.605; when a declaratory judgment is necessary to guide a plaintiff's future conduct in order to preserve legal rights, there is an actual controversy and a declaratory judgment may be issued under MCR 2.605(A)(1), and in those cases courts are not precluded from reaching issues before actual injuries or losses have occurred; to establish an "actual controversy" under the rule, a plaintiff must plead and prove facts that demonstrate an adverse interest necessitating the sharpening of the issues raised.

2. PUBLIC EMPLOYEES — POLITICAL ACTIVITY — RESTRICTIONS DURING WORK.

A public employee may engage in partisan political activity except during those hours when that person is being compensated for the performance of that person's duties as a public employee; a public employer may regulate and even prohibit off-duty activity that adversely interferes with job performance, but a public employer may not completely curtail an employee's off-hours activity as a matter of policy simply because the activity may conceivably interfere with job performance; rather it may only deal with the adequacy of job performance on a case-by-case basis.

*Ava R. Barbour* for plaintiffs.

*Vercruysse Murray & Calzone, PC* (by *Robert M. Vercruysse* and *Gary S. Fealk*), for defendants.

Before: Whitbeck, P.J., and Murray and Donofrio, JJ.

Per Curiam. Plaintiffs, the International Union, United Automobile, Aerospace & Agricultural Implement Workers of America and UAW Local 6888 (collectively, the Union), appeal the circuit court order granting summary disposition in favor of defendants, Central Michigan University Trustees and Central Michigan University President (collectively, the CMU officials), under MCR 2.116(C)(10) and MCR 2.116(C)(5).[1] The Union is the collective-bargaining representative for office professional employees of Central Michigan University (the University or CMU), and it filed a complaint on behalf of its members who are employed by the University. The trial court found that the CMU officials' policy and procedures regarding university employees' candidacies for public office did not violate the Political Activities by Public Employees Act (the Act)[2] and that the Union's members suffered no particularized injury as a result of the policy and procedures. We reverse in part and affirm in part.

I. FACTS

On December 4, 2008, the CMU Board of Trustees adopted the political candidacy of employees policy (candidacy policy), which provides, in part:

Employees who seek public office of any kind must do so on their own time. They must be clear in their statements of candidacy that they are not speaking on behalf of Central Michigan University, and they must do everything reasonably within their control to assure that there is no public misperception on this point. They may not use any university

---

[1] The CMU officials also filed a cross-appeal. However, the parties agreed to dismiss those claims after oral argument.

[2] MCL 15.401 through MCL 15.407.

resources of whatever kind in furtherance of campaign activity; nor may the university or its employees use any university resources to assist, oppose or influence their campaign.

Any employee of the university who becomes a <u>candidate</u> for nomination and/or election to any federal, state, county, or local office, whether it be part-time or full-time, paid or unpaid, is required, upon filing for candidacy, to present to the applicable personnel office (either Human Resources or Faculty Personnel Services) a statement from her/his supervisor and the applicable vice president or the provost (or president with respect to members of the president's division) of CMU attesting that appropriate arrangements have been made to ensure that their candidacy in no way will interfere with the full performance of their university work and that their candidacy will pose no conflict with professional standards or ethics.

Further, any employee of the university, who is <u>elected or appointed</u> to any public office, shall present to the appropriate CMU personnel office, within twenty (20) work days after having been elected or appointed, a statement from her/his supervisor and the applicable vice president or the provost (or president with respect to members of the president's division) of CMU attesting that appropriate arrangements have been made to ensure that the duties associated with the public office in no way will interfere with the full performance of their university work and that those duties pose no conflict of interest with respect to CMU employment. If the duties associated with the public office will interfere with the full performance of the employee's university work, or do pose a conflict of interest, then an alternate relationship with the university must be arranged, which may include a change from full-time university status to that of part-time, an unpaid leave of absence, or termination of employment. Reasonable alternatives short of termination must be explored. Leaves of absence for long periods of time, or requests for subsequent or sequential leaves, will be considered and approved upon presentation of a compelling advantage to the university.

The candidacy policy also includes an introductory paragraph encouraging employees' public service and emphasizing the importance of separating any public service from their university work.

On March 15, 2009, the president of CMU issued a draft of procedures and guidelines (draft procedures) pertaining to the candidacy policy. The draft procedures required employees to discuss their desire to be a candidate for office with their supervisor and applicable vice president at least 60 days before filing for candidacy. The draft procedures further provided that the vice president or provost must be convinced that no substantial conflict of interest or conflict of commitment would be involved in becoming a candidate. The vice president or provost also had to gain the president's support before issuing a statement to the relevant personnel office. The draft procedures similarly required an elected or appointed employee to discuss with his or her supervisor and applicable vice president or provost, within 20 days of election or appointment, how the employee's election or appointment would not interfere with normal work responsibilities. The vice president or provost had to be convinced that there was no substantial conflict of commitment or conflict of interest and also gain the president's support before issuing a statement to the relevant personnel office. The draft procedures further provided that if the vice president or provost was not convinced that there was no conflict of interest or conflict of commitment, the employee could suggest an alternative or reduced work assignment or take an unpaid leave of absence to eliminate any conflict. The draft procedures stated that any employee who did not follow the procedures was subject to discipline, including discharge.

The Union filed suit, seeking declaratory and injunctive relief preventing the CMU officials from applying the candidacy policy and the draft procedures. The Union alleged that the candidacy policy and draft procedures placed requirements and conditions on employees that violated their rights to run for office under the Act. Both parties moved for summary disposition.

The Union argued that the Act barred the CMU officials from interfering with university employees' off-duty political conduct and that the candidacy policy placed conditions on employees' ability to run for office when there was no conflict with work. The CMU officials responded that the candidacy policy properly regulated employees' work conduct and was consistent with the Act.

The CMU officials argued that there was no case for the trial court to decide because the University had not applied the candidacy policy to any employees. The Union responded that they did not lack standing because there was an actual controversy given that the candidacy policy threatened to harm employees represented by the Union.

The trial court granted the CMU officials' motion for summary disposition according to MCR 2.116(C)(10) (no genuine issue of material fact) and MCR 2.116(C)(5) (lack of standing to sue). With respect to MCR 2.116(C)(10), the trial court concluded that the candidacy policy and draft procedures did not violate the Act because they were a permissible mechanism to ensure that university employees adhered to the Act by regulating only political activities that interfered with work. The trial court also found that the CMU officials did not regulate political content, activity, or views of employees and provided discipline only for violating the candidacy policy and the procedures. With respect to MCR

2.116(C)(5), the trial court concluded that the Union's members had suffered no particular injury because the candidacy policy adhered to the Act and because no one had attempted to become a candidate since the University implemented the candidacy policy. The trial court also denied the Union's motion for summary disposition and denied its request for declaratory and injunctive relief.

The Union now appeals.

## II. MCR 2.116(C)(5)

### A. STANDARD OF REVIEW

The Union argues that the trial court erred by granting summary disposition in favor of the CMU officials under MCR 2.116(C)(5) on the basis of lack of standing to sue. " 'In reviewing a motion for summary disposition pursuant to MCR 2.116(C)(5), this Court must consider the pleadings, depositions, admissions, affidavits, and other documentary evidence submitted by the parties.' "[3] This Court reviews de novo a trial court's determination on a motion for summary disposition[4] as well as the legal question of whether a party has standing to sue.[5]

### B. LEGAL STANDARDS

The trial court found that the Union's members suffered no injury because none of the Union's members had attempted to become a candidate for public office since the University implemented the candidacy

---

[3] *Aichele v Hodge*, 259 Mich App 146, 152; 673 NW2d 452 (2003) (citation omitted).

[4] *Ormsby v Capital Welding, Inc*, 471 Mich 45, 52; 684 NW2d 320 (2004).

[5] *Manuel v Gill*, 481 Mich 637, 642-643; 753 NW2d 48 (2008).

policy and because the University had not implemented the draft procedures. The trial court concluded that it was unlikely to redress any speculative injury because it found that the policy was legal. In so holding, the trial court relied on the principles set forth in *Nat'l Wildlife Federation v Cleveland Cliffs Iron Co*[6] and *Mich Citizens for Water Conservation v Nestlé Waters North America Inc.*[7] However, two days before the trial court's opinion, the Michigan Supreme Court held in *Lansing Sch Ed Ass'n v Lansing Bd of Ed*[8] that the doctrine relied on in those cases "lacks a basis in the Michigan Constitution and is inconsistent with Michigan's historical approach to standing."

The Supreme Court held:

> Michigan standing jurisprudence should be restored to a limited, prudential doctrine that is consistent with Michigan's longstanding historical approach to standing. Under this approach, a litigant has standing whenever there is a legal cause of action. Further, whenever a litigant meets the requirements of MCR 2.605, it is sufficient to establish standing to seek a declaratory judgment. Where a cause of action is not provided at law, then a court should, in its discretion, determine whether a litigant has standing. A litigant may have standing in this context if the litigant has a special injury or right, or substantial interest, that will be detrimentally affected in a manner different from the citizenry at large or if the statutory scheme implies that the Legislature intended to confer standing on the litigant.[9]

---

[6] *Nat'l Wildlife Federation v Cleveland Cliffs Iron Co*, 471 Mich 608, 628-629; 684 NW2d 800 (2004).

[7] *Mich Citizens for Water Conservation v Nestlé Waters North America Inc*, 479 Mich 280, 294-295; 737 NW2d 447 (2007).

[8] *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 352-353; 792 NW2d 686 (2010).

[9] *Id.* at 372.

In so stating, the Supreme Court overruled *Nat'l Wildlife Federation* and its progeny. Therefore, under the current approach, it is sufficient to establish standing to seek a declaratory judgment when a litigant meets the requirements of MCR 2.605.[10]

MCR 2.605(A)(1) provides:

> In a case of actual controversy within its jurisdiction, a Michigan court of record may declare the rights and other legal relations of an interested party seeking a declaratory judgment, whether or not other relief is or could be sought or granted.

MCR 2.605 does not limit or expand the subject-matter jurisdiction of the courts, but instead incorporates the doctrines of standing, ripeness, and mootness.[11] An "actual controversy" under MCR 2.605(A)(1) exists when a declaratory judgment is necessary to guide a plaintiff's future conduct in order to preserve legal rights. The requirement prevents a court from deciding hypothetical issues.[12] However, by granting declaratory relief in order to guide or direct future conduct, courts are not precluded from reaching issues before actual injuries or losses have occurred.[13] The essential requirement of an "actual controversy" under the rule is that the plaintiff pleads and proves facts that demonstrate an " 'adverse interest necessitating the sharpening of the issues raised.' "[14]

---

[10] *Id.*

[11] *MOSES, Inc v SEMCOG*, 270 Mich App 401, 416; 716 NW2d 278 (2006).

[12] *Associated Builders & Contractors v Dir of Consumer & Indus Servs*, 472 Mich 117, 126; 693 NW2d 374 (2005), overruled on other grounds in *Lansing Sch Ed Ass'n*, 487 Mich 349.

[13] *Huntington Woods v Detroit*, 279 Mich App 603, 616; 761 NW2d 127 (2008); *Lake Angelus v Aeronautics Comm*, 260 Mich App 371, 376-377; 676 NW2d 642 (2004).

[14] *Associated Builders & Contractors*, 472 Mich at 126.

### C. APPLYING THE LEGAL STANDARDS

At the outset, we conclude that the trial court was correct by determining that the Union did not have standing to the extent that it challenged the *draft procedures*. Guidance on the future implications of the draft procedures would be speculative and hypothetical because those procedures were still in draft form and the University had not yet implemented them.

Turning to the candidacy policy, it is true that the Union's members had suffered no injury because no university employee had attempted to become a candidate since the University adopted the policy in December 2008.[15] However, applying MCR 2.605, we conclude that the Union has standing to pursue its claims for declaratory and injunctive relief because it presented an actual controversy regarding the scope of the university employees' rights under the Act and the legitimacy of the candidacy policy. To hold otherwise would be inconsistent with the purpose of a declaratory judgment, which is

> to enable the parties to obtain adjudication of rights *before an actual injury occurs*, to settle a matter *before it ripens into a violation of the law* or a breach of contract, or to avoid multiplicity of actions by *affording a remedy for declaring in expedient action the rights and obligations of all litigants*.[16]

There is an actual controversy between the parties because the CMU officials promulgated a policy that is allegedly at odds with a state statute. And although no

---

[15] *MOSES*, 270 Mich App at 414 (providing that organizations have standing to bring suit in the interest of their members when those members would have standing as individual plaintiffs).

[16] *Rose v State Farm Mut Auto Ins Co*, 274 Mich App 291, 294; 732 NW2d 160 (2006) (emphasis added).

university employee has yet sought to run for office, it is appropriate for the Union to seek an adjudication of its members' rights and responsibilities before the candidacy policy causes actual injury or ripens into a violation of the law by interfering with the employees' ability to engage in off-duty political activity.

Moreover, applying the principles announced in *Lansing Sch Ed Ass'n*, the Union has standing because the university employees have a special and substantial interest in ensuring that the CMU officials' policies do not violate their statutory rights under the Act, and that interest is different from any rights or interests of the public at large.[17]

Thus, we conclude that the trial court erred by finding that the Union had not presented an actual controversy and by determining that the Union did not have standing to seek declaratory and injunctive relief regarding the university employees' rights under the candidacy policy.

### III. MCR 2.116(C)(10)

#### A. STANDARD OF REVIEW

The Union argues that the trial court erred by granting the CMU officials' motion for summary disposition pursuant to MCR 2.116(C)(10). When reviewing a motion brought under MCR 2.116(C)(10), the court considers the affidavits, depositions, pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party.[18] Summary disposition is appropriate if there is no genuine issue regarding any material fact and the moving

---

[17] *Lansing Schools Ed Ass'n*, 487 Mich at 372.

[18] *Rose v Nat'l Auction Group, Inc*, 466 Mich 453, 461; 646 NW2d 455 (2002).

party is entitled to judgment as a matter of law.[19] This Court reviews de novo a trial court's determination on a motion for summary disposition.[20]

B. LEGAL STANDARDS

MCL 15.403 of the Act provides, in relevant part:

(1) An employee of a political subdivision of the state may:

\* \* \*

(c) Become a candidate for nomination and election to any state elective office, or any district, county, city, village, township, school district, or other local elective office without first obtaining a leave of absence from his employment. If the person becomes a candidate for elective office within the unit of government or school district in which he is employed, unless contrary to a collective bargaining agreement the employer may require the person to request and take a leave of absence without pay when he complies with the candidacy filing requirements, or 60 days before any election relating to that position, whichever date is closer to the election.

(d) Engage in other political activities on behalf of a candidate or issue in connection with partisan or nonpartisan elections.

The activities permitted in MCL 15.403 "shall not be actively engaged in by a public employee during those hours when that person is being compensated for the performance of that person's duties as a public employee."[21]

The language of the Act is unambiguous.[22] A public employee may engage in partisan political activity ex-

[19] *Id.*

[20] *Ormsby*, 471 Mich at 52.

[21] MCL 15.404.

[22] *Mich State AFL-CIO v Civil Serv Comm*, 455 Mich 720, 734; 566 NW2d 258 (1997).

cept "during those hours when that person is being compensated for the performance of that person's duties as a public employee."[23]

### C. APPLYING THE LEGAL STANDARDS

Given our conclusion that the Union did not have standing to challenge the draft procedures, we need not address the Union's claims regarding the implications of those procedures. Thus, we focus our analysis on the legitimacy of the candidacy policy.

The Union argues that the candidacy policy violated the Act because it interferes with its members' ability to engage in political activities during nonwork hours. More specifically, the Union asserts that the candidacy policy violates the Act because it requires an employee to provide advance notice and engage in advance discussion with two levels of superiors when seeking to participate in political office. Those superiors must then attest that the political activity will not present a conflict of interest or interfere with employment. The candidacy policy further provides that failure to demonstrate that political candidacy activities will not interfere with university activities could affect the employee's job status.

The Michigan Supreme Court has recognized a public employer's

> power to regulate and even prohibit off-duty activity which is found to interfere with job performance.
>
> That power does not extend, however, to the blanket prohibition of off-duty activities, political or otherwise, as a matter of policy simply because such activities may conceivably interfere with satisfactory job performance. What an employee does during his off-duty hours is not of proper

---

[23] MCL 15.404; see also *Mich State AFL-CIO*, 455 Mich at 734.

concern to the [public employer] unless and until it is shown to adversely affect job performance. Even then the [public employer's] authority is not to curtail the off-hours activity, it is to deal with the adequacy of job performance. Certainly, it is within contemplation that off-duty political involvement may adversely affect a [public] employee's performance at work. If and when it does, the [public employer] is empowered to deal with such circumstances on a case-by-case basis.[24]

But public employers may not regulate the off-duty political activity of their employees in any way that preemptively conflicts with the Act.[25]

The trial court found that the candidacy policy did not violate the Act because it does "not restrict an employee's rights to engage in political activity and do[es] not hinge in any way on the political content or position an employee purports, nor do[es] [it] provide a blanket ban on an employee's off-duty political activity." We agree. The candidacy policy only regulates an employee's work and not an employee's activities outside of work. It does require consultation with the CMU officials regarding an employee's political candidacy, but this is to ensure that an employee's work responsibilities will not be affected. The CMU officials are empowered to deal with circumstances in which off-work political involvement may adversely affect an employee's performance at work.[26] The CMU officials have the authority to regulate "on-duty political activity or deal with unsatisfactory job performance attributable to off-duty political activity or any other cause on a case-by-case basis."[27] The state may regulate the

[24] *Council No 11 AFSCME v Civil Serv Comm*, 408 Mich 385, 407; 292 NW2d 442 (1980) (citations omitted).

[25] *Id.* at 408.

[26] *Id.* at 407.

[27] *Id.* at 409.

off-duty political activities of public employees when those activities interfere with job performance.[28]

The candidacy policy specifically requires that "appropriate arrangements have been made to ensure that their candidacy in no way will interfere with the full performance of their university work and that their candidacy will pose no conflict with professional standards or ethics." The candidacy policy does not curtail activities outside work and does not potentially curtail any work responsibility that was affected by activity outside work. The assurances that the policy requires are not whether or how an employee will seek political office. Rather, the assurances are that this activity will not interfere with work. Additionally, any discipline or leave of absence that a candidate/employee could be· assessed would be in response to political activities at work, rather than off-duty political pursuits. An employer may prohibit political activity during work hours when the employer compensates the employee and that compensation is for the performance of the employee's duties as a public employee.[29] It was therefore permissible for the CMU officials to regulate the Union members' work environment, and the trial court did not err in its findings.

Because the trial courts' properly determined that the CMU officials' candidacy policy did not violate the Act, it correctly denied declaratory and injunctive relief.

We reverse in part and affirm in part. We do not retain jurisdiction.

WHITBECK, P.J., and MURRAY and DONOFRIO, JJ., concurred.

---

[28] *Mich State AFL-CIO*, 455 Mich at 733.

[29] *Id.* at 734.