*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CITY OF MT PLEASANT,

Plaintiff-Appellee,

v

ACTING DIRECTOR OF DEPARTMENT OF
TECHNOLOGY, MANAGEMENT, AND
BUDGET, and ATTORNEY GENERAL,

Defendants-Appellants.

UNPUBLISHED
October 07, 2024
9:29 AM

No. 367866
Court of Claims
LC No. 23-000034-MB

Before: BORRELLO, P.J., and MURRAY and LETICA, JJ.

PER CURIAM.

In this declaratory judgment action involving a dispute over a condition attached to the conveyance of land, defendants appeal as of right the Court of Claims' order granting summary disposition and declaratory relief in favor of plaintiff City of Mt. Pleasant (the city). For the reasons set forth in this opinion, we reverse the judgment of the Court of Claims and remand this matter for entry of summary disposition in favor of the defendants.

## I. BACKGROUND

This case concerns an approximately 311-acre parcel that is located within the city's boundaries. The city obtained the parcel from the state of Michigan in 2011 for $1.00 pursuant to a quitclaim deed and 2010 PA 208, which the Legislature had enacted to authorize the conveyance. The quitclaim deed was executed on April 19, 2011, and recorded on April 25, 2011. Before conveying the parcel to the city, the state had most recently used the parcel as a psychiatric center.[1] The psychiatric center was closed in 2009. According to an appraisal of the property conducted in 2009, the condition of the existing improvements on the property ranged from average to poor and many of the improvements required immediate demolition. The parcel contained a central

---

[1] The subject property had been used as a psychiatric center known as the Mt. Pleasant Regional Center.

power plant, underground tunnels, and buildings that were primarily "institutional" in nature. The appraiser opined that the property could not be reused or redeveloped without "significant costs."

As relevant to the current dispute between the parties, 2010 PA 208 provided as follows:

> Sec. 1. (1) The state administrative board, on behalf of the state, may convey to the city of Mt. Pleasant, for consideration of $1.00, all or portions of certain state-owned property now under the jurisdiction of the department of community health, commonly known as the Mt. Pleasant center, located in the city of Mt. Pleasant, Isabella county, Michigan . . .
>
> * * *
>
> (4) The fair market value of the property described in subsection (1) shall be determined by an appraisal prepared for the department of technology, management, and budget by an independent appraiser.
>
> * * *
>
> (6) Any conveyance for less than fair market value authorized by subsection (1) . . . shall provide for all of the following:
>
> (a) The property shall be used exclusively for public purposes, and if any fee, term, or condition for the use of the property is imposed on members of the public, or if any of those fees, terms, or conditions are waived for use of this property, all members of the public shall be subject to the same fees, terms, conditions, and waivers.
>
> (b) In the event of an activity inconsistent with subdivision (a), the state may reenter and repossess the property, terminating the grantee's or successor's estate in the property.
>
> (c) If the grantee or successor disputes the state's exercise of its right of reentry and fails to promptly deliver possession of the property to the state, the attorney general, on behalf of the state, may bring an action to quiet title to, and regain possession of, the property.
>
> (d) If the state reenters and repossesses the property, the state shall not be liable to reimburse any party for any improvements made on the property.
>
> (e) The grantee shall reimburse the state for all costs necessary to prepare the property for conveyance, including, but not limited to, surveys, title work, appraisals, and environmental assessments.
>
> (7) For property conveyed pursuant to subsection (1) . . ., if the local unit of government grantee intends to convey the property within 10 years after the conveyance from the state, the grantee shall provide notice to the department of technology, management, and budget of its intent to offer the property for sale. The

department of technology, management, and budget shall retain a right to first purchase the property at the original sale price within 90 days after the notice at the original sale price plus the costs of any physical improvements made to the property, as determined by an auditor chosen by the state. If the state waives its right to first purchase the property, the local unit of government shall pay to the state 50% of the amount by which the sale price of the local unit's subsequent sale or sales of the property to a third party exceeds the sum of the original sale price and the costs of any physical improvements made by the local unit to the property, as determined by an auditor chosen by the state. As used in this subsection, "physical improvements" shall include, but not be limited to, the cost of environmental remediation, demolition, and infrastructure improvements.

(8) The conveyance authorized by this section shall be by quitclaim deed approved by the department of attorney general.

Additionally, the April 19, 2011 quitclaim deed provided in relevant part that the state quitclaimed the subject real property to the city, "[s]ubject . . . to the following" relevant conditions:[2]

1. The Property shall be used exclusively for public purposes. If any fees, terms or conditions for the use of the Property are imposed on members of the public, all members of the public shall be subject to the same fees, terms or conditions. If any fees, terms or conditions for the use of the Property are waived, all members of the public shall be entitled to the same waivers. In the event of an activity inconsistent with this public use restriction, Grantor [the state] may reenter and repossess the Property, terminating Grantee's [the city's] or any successor grantee's title to the Property. If Grantor reenters and repossesses the Property, Grantor shall not be liable to reimburse any party for any improvements made on the Property. If Grantee or any successor grantee disputes Grantor's exercise of its right of reentry and fails to promptly deliver title and surrender possession of the Property, the Attorney General, on behalf of Grantor, may bring an action to quiet title to, and regain possession of, the Property.

2. Grantor, through its Department of Technology, Management and Budget, reserves the right to purchase the Property upon the following conditions. This right expires upon the earlier of the following: 10 years from the date of conveyance to Grantee or 90 days after receipt of written notice of Grantee's intent to offer the Property or any part thereof for sale. The purchase price shall be one dollar plus the costs of any physical improvements to the Property including, but not limited to, environmental remediation, demolition and infrastructure improvements, as determined by an auditor chosen by Grantor. If the Grantor waives its right to first purchase the Property and Grantor [sic] sells it, Grantee shall pay Grantor fifty percent of the amount by which the sale price exceeds the sum of the following: one dollar and the costs of any physical improvements to the

---

[2] There were additional conditions that are not relevant to the current dispute between the parties.

Property made by Grantee including, but not limited to, environmental remediation, demolition and infrastructure improvements. Grantee shall deliver written notice of its intent to convey the Property to the Stevens T. Mason Building, 530 West Allegan Street, Lansing, Michigan 48933, Attn: Real Estate Director.

* * *

The terms of this conveyance apply to the administrators, successors, and assigns of the parties.

Several years after the conveyance, between 2019 and 2021, the city and the Michigan Department of Technology, Management and Budget (DTMB) exchanged a series of letters concerning the use of the subject property.

In a letter to the DTMB dated August 22, 2019, the city stated through legal counsel in relevant part as follows:

Thank you for talking with us about the Mt. Pleasant Center property. As you know, the City of Mt. Pleasant purchased the property from the State for $1.00 (plus the cost to prepare it for sale) pursuant to a deed recorded on April 25, 2011 (copy attached). The deed was issued under Act 208 of 2010 (copy attached). It is my understanding that the City was very clear throughout the drafting of the law and the closing on the deed that the City's primary goal was to use the property for economic development purposes to grow the tax base and/or create jobs in the community. The City has subsequently spent in excess of $5,600,000 in physical improvements (including environmental remediation, demolition and infrastructure improvements) to the property. I can get the exact number if necessary. The deed contains a public use restriction subject to a reverter clause, and also a two part purchase option. The purchase option appears to allow the State to purchase the property for a period that expires on the earlier of (1) 10 years after the date of conveyance to the City or (2) 90 days after the City notifies the State of the City's intent to offer the Property or any part of it for sale. It appears that the reverter clause may still apply to any sale to anyone other than the State, even if the State declines the 90 day purchase option.

We have a number of questions. First, does the reverter apply to a sale to someone other than the State even if the State declines to buy during the 90 day period? We understand the language of the deed, but if the State does not want to buy the property, why should the reverter remain in place? We think that does not make much sense.

You have indicated that the reverter can only go away if the City deeds the property back to the State, and then purchases the property back for its fair market value as of the date of the conveyance in 2011. We understand that the property appraised in 2010 or so for approximately $1,800,000. The appraisal report indicates that it does not take into account environmental or demolition issues. If those issues are taken into account, however, and based on what the City has spent

-4-

on physical improvements, is the State willing to agree that the fair market value of the property in 2010 was less than $1.00? In other words, can the City deduct the costs of physical improvements from the fair market value in 2010? Alternatively, will the State agree that because the City has spent more than $5,600,000 on physical improvements, it has paid the equivalent of fair market value and therefore the reverter should be released? Could the City get a current fair market appraisal of the property, deduct the costs it has incurred from that, and then pay the State any remaining fair market value in exchange for a release of the reverter?

Another idea we had is to ask whether the State is willing to sell the reverter to the City for some nominal amount? Or can the City pay some amount to the State in exchange for which the State agrees not to exercise the reverter?

I understand that another option would be to get new legislation passed, although that can take some time.

The DTMB responded in a letter dated September 18, 2020, stating in relevant part as follows:

This letter is to address the questions that you asked in your letter of August 22, 2019. I would like to thank you for your patience as our Assistant Attorney General researched the conveyance of the Mt. Pleasant Center that was completed in 2011, and again as DTMB has focused on issues relevant to the Covid-19 pandemic.

You asked if the reverter clause contained in the deed issued under Act 208 of 2010 applies to a new buyer if the City of Mt. Pleasant were to notify the Department of Technology, Management and Budget (DTMB) of its intent to offer the property for sale and the state declines to exercise its right to first purchase. The answer is that the reverter clause would remain intact. Because DTMB conveyed the property to the City of Mt Pleasant for less than fair market value, the restriction requiring the property to be used only for a public purpose will stay with the deed should the City subsequently sell the property to another buyer.

The only way to eliminate a reversion clause from the existing deed under the current legislation, is for the City to return the properly to DTMB for the dollar it originally paid and to repurchase the property for the fair market value determined in 2009. There is no opportunity under the statute as written, for the State to "sell" the reverter clause for a nominal amount. The alternative option as you have recognized would be to obtain new legislation that would address these issues.

The city responded through counsel in a letter dated September 29, 2020, stating in relevant part:

We received your letter of September, 18, 2020, regarding the Mt. Pleasant Center property. We are disappointed that the State is unwilling to work with the City in coming up with creative ideas to resolve the wording in the deed so that the City can put the property to work for a reasonable public purpose – such as

-5-

economic development since the State was fully aware that was always the City's plan. The State in its letter did not address our concern that the Mt. Pleasant Center fair market value analysis failed to account for the real world factors of environmental issues and demolition needed at the property. The appraisal that determined the fair market value in 2009 explicitly states that it does not take into account the environmental condition of the property or the demolition costs needed to make the property usable. Additionally, the appraisal is based upon a division of the property into four parcels, and using those four parcels for (1) a to-be-determined use, (2), medical and office, (3) retail/commercial, and (4) agricultural/residential. None of those uses are feasible in light of the reverter.

The City has incurred more than $5,600,000 in environmental, demolition and other costs on the property simply to get the property into a usable condition for sale. The fair market value of the property in 2009 was therefore zero. The fair market appraisal in 2009 for $1,760,000 was clearly flawed - it did not take into account very real factors affecting the value of the property. When those factors (environmental condition, demolition, usage) are taken into account, as they should have been in 2009, the City did pay fair market value of $l.00 plus almost $55,000, in closing costs, plus the costs of placing the property into a usable condition.

We are writing to ask that the State consider the fact that the appraisal was flawed in 2009 by not taking into account the environmental condition of the property, plus the demolition and other costs any buyer would have to take into account when actually determining a fair market price for the property. As previously requested in our August 22, 2019 letter, we have several additional questions:

1. Will the State agree that, because the City has spent more than $5,600,000 on environmental work, demolition and physical improvements, the City paid the equivalent of fair market value, based on the 2009 appraisal, and therefore the reverter can be released?

2. Could the State get a fair market appraisal retroactive to 2009 that properly takes into account the very real conditions of the property that were excluded from the 2009 appraisal? Would the State consider such a retroactive appraisal?

3. Could the City get a current fair market appraisal of the property, deduct the costs the City has incurred from that appraisal amount, and then pay the State any remaining fair market value in exchange for a release of the reverter?

In a letter dated March 17, 2021, the DTMB stated:

This communication is in response to your letter of February 25, 2021, containing questions on how the State might assist the City of Mt. Pleasant in circumventing the public purpose use requirement and/or the right to re-enter contained in 2010 PA 208 and your conveyance deed.

As we previously explained, the present ACT does not allow the removal of the reverter without payment of fair market value. You indicated that the City intends to use the property for economic development; however, as we have previously explained that can only be achieved by paying fair market value under the current law. We consider this matter to be closed unless new legislation is enacted to address the issue.

Should the City be interested in exploring new legislation, we again affirm that DTMB is available to assist with drafting said legislation.

The city initiated this action in the Court of Claims by way of a verified complaint filed on March 14, 2023. The city named as defendants Michelle Lange in her official capacity as acting director for the DTMB and Dana Nessel in her official capacity as the Michigan Attorney General. Citing a letter that the city sent to the DTMB in 2009, the city alleged in its complaint that the DTMB was aware before the conveyance of the property that the city intended to use the property for economic development. This letter, dated November 19, 2009, was addressed to the director of the DTMB from the city's manager and stated in relevant part that "[a]s you are aware, the City is working with Senator Cropsey and Representative Caul to craft legislation that will allow Mt. Pleasant to secure the land for public purpose and/or to incent future development that would be in concert with existing contiguous uses."

The city alleged in its complaint that 2010 PA 208 "contemplated that the City would, and could, sell all or some portion of the Property." The city also alleged in its complaint that "[b]ecause at the time of its enactment Michigan law included economic development within the definition of 'public purpose,' the Act [2010 PA 208] contemplates that the Property could or would be used for economic development." Thus, the city maintained that using the property for economic development was consistent with the public purpose requirement in 2010 PA 208 and that the DTMB's erroneous interpretation was restricting the city from using the property for public purposes that included economic development. Consequently, as relevant to this appeal, the city sought a declaratory judgment declaring that economic development was a public purpose for purposes of 2010 PA 208 for which the subject property could be used without triggering the state's reverter rights in the property.[3]

The city moved for summary disposition under MCR 2.116(C)(10) concurrently with the filing of its complaint. Defendants opposed the motion and argued that summary disposition should instead be granted in favor of defendants under MCR 2.116(I)(2). First, defendants argued that the city's claims were time-barred for three reasons. Defendants contended that the city's claims accrued either on April 21, 2011, when the deed was prepared containing the allegedly improper language, or, at a minimum, in 2019 when the city was clearly aware of the state's position regarding permissible uses of the property. Consequently, defendants argued, the city's complaint was required to be dismissed because the city failed to file its claim or notice of claim within one year of accrual as required by MCL 600.6431(1). Defendants similarly argued that the city's complaint was time barred under the Court of Claims Act's three-year statutory limitations

---

[3] The city also sought a writ of mandamus. That claim was subsequently dismissed as moot and is not at issue on appeal.

period in MCL 600.6452(1). Defendants further argued that the city's complaint was barred by the doctrine of laches because the city waited until after the expiration of the 10-year period during which the state had certain rights regarding any sale of the property pursuant to 2010 PA 208. Regarding the merits of the city's claims, defendants also maintained that the city's claims should be dismissed for failure to plead viable claims.

The parties submitted supplemental briefing pursuant to the court's order. The city stated that it had existing plans for economic development of the property, which fell within the scope of the required "public purpose" limitation, and that its claims were thus ripe. Specifically, the city submitted evidence that it had adopted a future land use map for the property on November 9, 2020, that was based on community input. The map showed the city's plans for using the property for a mix of uses that included residential use, "attached residential" use (i.e., condominiums, duplexes, or triplexes), a park or other public open space, mixed-use low density residential and commercial uses, and potentially light-industrial or research uses. The city argued that it had been harmed, and this action was therefore ripe, because defendants had created uncertainty whether they would "proclaim, without any standards, that the redevelopment of the Property is not a sufficient public purpose and invoke their right to reenter the Property if those development plans move forward." Further, the city argued that its proposed uses constituted public purposes under 2010 PA 208, noting that the act contemplated potential sales to private parties. Citing *City of Mt Pleasant v State Tax Comm*, 477 Mich 50, 55; 729 NW2d 833 (2007), the city argued that "[e]xpanding a tax base, providing housing, and providing businesses to serve the residents who occupy that housing is a public purpose."

Defendants also submitted a supplemental brief. First, defendants alleged that the state had not been provided with a proposed plan for the property but that it appeared that the city intended to use at least a portion of the property for commercial or residential purposes. Hence, defendants argued, the city's claim was either time-barred or unripe. Next, defendants argued that 2010 PA 208 specifically required that the property must be used *exclusively* for public purposes and that this requirement applied to the city and all subsequent users of the property because the limitation was placed on the property itself, rather than merely on the city's ability to use the property. Thus, defendants reasoned, use of the property in any manner for "business or otherwise private purposes" would constitute a violation of 2010 PA 208 that would trigger the state's reverter rights.

The Court of Claims entered an order granting the city's motion for summary disposition under MCR 2.116(C)(10). The court concluded that the city's claim for declaratory relief was not time-barred, reasoning as follows:

> Plaintiff in the instant case has not yet been disseised, and the State has to date not exercised its right of reverter. The letters to plaintiff to date represent, at most, a shot across the bow informing plaintiff that its proposed actions could result in such future actions on the part of the State. No cause of action for damages has yet accrued; therefore, plaintiff was not required to file notice or a complaint under MCL 600.6431 with respect to plaintiff's request for declaratory relief.

Next, the trial court concluded that the city's claim for declaratory relief was ripe because there was an "actual controversy" between the parties regarding whether the city's proposed economic development use satisfied the public purposes requirement in 2010 PA 208 and the

court's ruling on the matter was necessary to guide the parties' future conduct. The trial court further noted that it was not precluded from ruling on this issue before an actual *injury* had been suffered so long as the actual controversy requirement for a declaratory judgment action was satisfied. The court reasoned:

> Without at least a preliminary finding that plaintiff's proposed uses fit within the definition of "public purpose", plaintiff is left with the uncertainty of whether it can continue its current redevelopment plans even though plaintiff is only at an early stage of redevelopment. Plaintiff is correct that, particularly with respect to using part of the property for commercial or residential use, it is questionable whether outside parties would take the risk of investing their own resources or moving forward with future site work, such as the installation of access roads or utilities prior to a ruling regarding the State's right to reenter and assert ownership of the property. The Court therefore disagrees with defendant's argument that plaintiff's request for declaratory judgment is not ripe.

Finally, the trial court concluded that the city's proposed economic development uses as set forth in its future land use map fell within the requirements of 2010 PA 208 that the property be used for public purposes. The court granted defendants' motion to stay the effect of the court's August 31, 2023 opinion and order "until the Court of Appeals issues a final opinion or otherwise disposes of defendants' appeal."

## II. STANDARD OF REVIEW

"This Court reviews de novo a trial court's decision on a motion for summary disposition in an action seeking declaratory relief." *Mich Alliance for Retired Americans v Secretary of State*, 334 Mich App 238, 252; 964 NW2d 816 (2020). The applicable standard for reviewing a ruling on a motion under MCR 2.116(C)(10) is well established:

> When deciding a motion for summary disposition under MCR 2.116(C)(10), a court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence submitted in the light most favorable to the nonmoving party. Summary disposition is proper under MCR 2.116(C)(10) if the documentary evidence shows that there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. A genuine issue of material fact exists when the record, giving the benefit of any reasonable doubt to the opposing party, leaves open an issue on which reasonable minds could differ. [*Ernsting v Ave Maria College*, 274 Mich App 506, 509-510; 736 NW2d 574 (2007) (citations omitted).]

The interpretation of the Court of Claims Act (COCA), MCL 600.6401 *et seq*., presents issues of statutory construction that this Court reviews de novo as questions of law. *Doe v Dep't of Transp*, 324 Mich App 226, 231; 919 NW2d 670 (2018).

> "The primary goal when interpreting a statute is to discern the intent of the Legislature by focusing on the most 'reliable evidence' of that intent, the language of the statute itself." "When legislative intent is clear from the language, no further

construction is required or permitted." When considering the correct interpretation, the statute must be read as a whole and in a manner that ensures that it works in harmony with the entire statutory scheme. [*Christie v Wayne State Univ*, 511 Mich 39, 47-48; 993 NW2d 203 (2023) (citations omitted).]

## III. ANALYSIS

Defendants first argue that the city's declaratory judgment claim should have been dismissed because the city failed to file a written notice or claim within one year of accrual as required by MCL 600.6431(1).

MCL 600.6431, which is located in the COCA, provides in relevant part as follows:

(1) Except as otherwise provided in this section, a claim may not be maintained against this state unless the claimant, within 1 year after the claim has accrued, files in the office of the clerk of the court of claims either a written claim or a written notice of intention to file a claim against this state or any of its departments, commissions, boards, institutions, arms, or agencies.

\* \* \*

(5) This section does not apply to a claim for compensation under the wrongful imprisonment compensation act [WICA], 2016 PA 343, MCL 691.1751 to 691.1757.

As a general matter, plaintiffs suing in the Court of Claims must comply with the requirements of the COCA, including MCL 600.6431. *Progress Mich v Attorney Gen*, 506 Mich 74, 89 & n 8; 954 NW2d 475 (2020). "[T]he notice requirements of MCL 600.6431(1) apply to all claims against the state . . . except as otherwise exempted in MCL 600.6431 itself." *Christie*, 511 Mich at 45. In *Christie*, the Court stated, "the Legislature was clear that the only exception to MCL 600.6431(1)'s notice requirements is contained 'in this section'—in other words, in MCL 600.6431. The only exception to the notice requirements expressed in MCL 600.6431 is the exception for WICA claims found in MCL 600.6431(5)." *Christie*, 511 Mich at 53.

"[A]dherence to the conditions set forth in MCL 600.6431 is necessary to successfully expose the defendant state agencies to liability," and "when a notice [is] either unverified but timely or untimely but verified, . . . it fails to meet the conditions precedent to maintaining a suit against the [state]." *Id*. at 49-51 (quotation marks and citations omitted; ellipsis and second and third alterations in original). The "failure to file a compliant claim or notice of intent to file a claim against the state within the relevant time periods designated in [MCL 600.6431] will trigger the statute's prohibition that '[n]o claim may be maintained against the state . . .' " and therefore require dismissal of the action. *McCahan v Brennan*, 492 Mich 730, 742, 743, 752; 822 NW2d 747 (2012) (second alteration in original).

As an initial matter, it is necessary to first address the city's argument that MCL 600.6431 does not apply in this case because the city sued the Attorney General and the acting DTMB director, who are officers or employees and not "the state." This Court has held that the requirements of MCL 600.6431 do not apply to a gross negligence claim against an individual

state employee because such an individual is not "the state." *Pike v Northern Mich Univ*, 327 Mich App 683, 694, 698; 935 NW2d 86 (2019).

In *Pike*, 327 Mich App at 687-688, the plaintiff was a student at Northern Michigan University (NMU) who was injured after falling from a rock-climbing wall during a physical education class in NMU's Physical Education and Instructional Facility. The plaintiff sued both NMU and the instructor of the class, Peter Bosma, alleging negligence against the university and gross negligence against Bosma. *Id*. This Court affirmed the Court of Claims' dismissal of the claims against NMU on summary disposition because the plaintiff had failed to comply with the applicable statutory notice requirements. *Id*. at 693-694. However, this Court reversed the order of the Court of Claims granting summary disposition in favor of Bosma, holding that "the requirements of MCL 600.6431 did not apply to the gross-negligence claim against Bosma because it was not a claim against 'the state.' " *Id*. at 698. This Court reasoned that MCL 600.6431 specifically provided that a claim could not "be maintained against 'the state' unless timely notice is filed" and that "the state" did not encompass state employees such as Bosma where there was no reference in the statute to officers, employees, members, volunteers, or other individuals. *Id*. at 694-696.

This Court contrasted MCL 600.6431 with the COCA's jurisdictional statute, MCL 600.6419, which expressly extended jurisdiction of the Court of Claims to state officers and employees. *Id*. at 695-696. Observing that the definition of "the state or any of its departments or officers" in MCL 600.6419(7)—which defined that term for purposes of "*this section*" to include in relevant part "*an officer, employee, or volunteer* of this state or any governing, legislative, or judicial body, department, commission, board, institution, arm, or agency of this state . . ."—only applied to MCL 600.6419 because of the express limiting language in that definition, this Court reasoned that this definition therefore did not apply to MCL 600.6431. *Id*. at 694-698 (emphasis added).

In this case, however, there is no indication that the city has raised any claims against Lange and Attorney General Nessel individually, such as a gross-negligence claim similar to the one raised against the individual university instructor in *Pike*. Instead, the city's complaint expressly states that the city sued Lange and Attorney General Nessel in their respective official capacities as acting director of the DTMB and the Michigan Attorney General. It is clear from their complaint that the city seeks to prevent Lange and Attorney General Nessel from asserting *the state's* right to reenter and repossess the property based on how the property is used; both the deed and 2010 PA 208 unequivocally state that this reverter right is held *by the state*,[4] and neither indicate that this right is held by Lange or Attorney General Nessel individually. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Mays v Snyder*, 323 Mich App 1, 88; 916 NW2d 227 (2018), aff'd sub nom *Mays v Governor of Mich*, 506 Mich 157; 954 NW2d 139 (2020) (quotation marks and citation omitted); see also *Will v Mich Dep't of State Police*, 491 US 58, 71; 109 S Ct 2304; 105 L Ed 2d 45 (1989) (same). Accordingly, the city's

---

[4] See 2010 PA 208, § 1(6)(b), and paragraph 1 of the deed, both of which are quoted above.

claim seeking a declaratory judgment is essentially one against the state, and MCL 600.6431(1) applies. *Mays*, 323 Mich App at 88; *Christie*, 511 Mich at 45.

Contrary to the city's appellate argument, *Progress Mich* does not require a different conclusion. In that case, the plaintiff filed suit in the Court of Claims challenging the denial of its Freedom of Information Act (FOIA) request by the defendant, then Attorney General William Schuette. *Progress Mich*, 506 Mich at 81. In the Court of Claims, the defendant argued that the matter should be dismissed because the plaintiff's original complaint was not signed and verified as required by MCL 600.6431(1). *Id*. at 82. The Court of Claims concluded that the plaintiff had complied with MCL 600.6431(1) by filing a verified amended complaint that still was within the specified one-year period. *Id*. at 82-83. In the Michigan Supreme Court, the defendant similarly maintained that he was entitled to governmental immunity because the plaintiff's original complaint was not verified and the plaintiff had therefore not complied with MCL 600.6431. *Id*. at 86, 89. Although the defendant had sought to use the statute as a defense, the defendant "offered the concession" that MCL 600.6431 would not apply pursuant to *Pike* because the defendant was "not 'the state' " while nonetheless arguing that *Pike* was wrongly decided. *Id*. at 90.

The Supreme Court determined that "[e]ven if MCL 600.6431 does not apply because defendant is not a 'state,' there is no question plaintiff was required to comply with MCL 600.6434," which also required the complaint to be verified. *Id*. at 91. In concluding that the original complaint could be amended to satisfy the verification requirement, our Supreme Court never decided whether the defendant was the "state" or whether MCL 600.6431 actually did not apply. *Id*. at 95, 97-99.

Thus, contrary to the city's argument, *Progress Mich* does not stand for the general proposition that MCL 600.6431 never applies if the Attorney General, or another state officer or employee is named as a party. The relevant question is instead whether the suit is against the state official in his or her official capacity such that it is a suit against the official's office. *Mays*, 323 Mich App at 88. As discussed above, the suit here is clearly against the offices of the Attorney General and the director of the DTMB rather than the individuals occupying those offices and is thus actually a suit against the state itself. *Id*.

Having concluded that MCL 600.6431 is applicable, the next issue to address is the determination of when the city's claim accrued. For purposes of MCL 600.6431,

> a claim accrues "at the time the wrong upon which the claim is based was done," MCL 600.5827, and . . . "the wrong . . . is the date on which the defendant's breach harmed the plaintiff, as opposed to the date on which defendant breached his duty," *Frank v Linkner*, 500 Mich 133, 147; 894 NW2d 574 (2017) (quotation marks and citation omitted). A claim does not accrue until each element of the cause of action, including some form of damages, exists. [*Mays*, 506 Mich at 182 (opinion by BERNSTEIN, J.) (second ellipsis in original).]

Thus, to determine when a claim accrued, it is necessary to "determine the date on which plaintiff[] first incurred the harms [it] assert[s], and the "relevant 'harms' for that purpose are the actionable harms alleged in a plaintiff's cause of action." *Frank*, 500 Mich at 150. It therefore becomes necessary to precisely focus on the harms actually alleged by the city in order to

determine the date on which the asserted harms were first incurred and, in turn, when the asserted claim accrued, on which the city's declaratory judgment request was based. *Id*.

A litigant may seek a declaratory judgment if the litigant meets the requirements of MCR 2.605. *UAW v Central Mich Univ Trustees*, 295 Mich App 486, 494-495; 815 NW2d 132 (2012). That court rule provides that "[i]n a *case of actual controversy* within its jurisdiction, a Michigan court of record may declare the rights and other legal relations of an interested party seeking a declaratory judgment, whether or not other relief is or could be sought or granted." MCR 2.605(A)(1) (emphasis added). "For the purpose of this rule, an action is considered within the jurisdiction of a court if the court would have jurisdiction of an action on the same claim or claims in which the plaintiff sought relief other than a declaratory judgment." MCR 2.605(A)(2). This Court has explained:

> MCR 2.605 does not limit or expand the subject-matter jurisdiction of the courts, but instead incorporates the doctrines of standing, ripeness, and mootness. An "actual controversy" under MCR 2.605(A)(1) exists when a declaratory judgment is necessary to guide a plaintiff's future conduct in order to preserve legal rights. The requirement prevents a court from deciding hypothetical issues. However, by granting declaratory relief in order to guide or direct future conduct, courts are not precluded from reaching issues before actual injuries or losses have occurred. The essential requirement of an "actual controversy" under the rule is that the plaintiff pleads and proves facts that demonstrate an " 'adverse interest necessitating the sharpening of the issues raised.' " [*UAW*, 295 Mich App at 495 (citations omitted).]

Our Supreme Court has cautioned that although "a court is not precluded from reaching issues before actual injuries or losses have occurred, there still must be a present legal controversy, not one that is merely hypothetical or anticipated in the future." *League of Women Voters of Mich v Secretary of State,* 506 Mich 561, 586; 957 NW2d 731 (2020) (quotation marks and citations omitted). Nonetheless, an "actual controversy exists when a declaratory judgment is needed *to guide a party's future conduct* in order to preserve that party's legal rights." *Id*. (emphasis added).

"Claims for declaratory relief necessarily derive from claims for substantive relief because declaratory relief lies only in cases of 'actual controversy,' and not merely for abstract declarations of rights divorced from a factual context." *Taxpayers Allied for Constitutional Taxation v Wayne Co*, 450 Mich 119, 128; 537 NW2d 596 (1995). "Declaratory relief is a mere procedural device by which various types of substantive claims may be vindicated." *Id*. (quotation marks and citation omitted).

Here, the city alleged in its complaint that it was entitled to a declaratory judgment declaring that economic development was a public purpose for purposes of 2010 PA 208 for which the subject property could be used without triggering the state's reverter rights in the property and that the DTMB's erroneous interpretation of the public purpose requirement was improperly restricting the city from using the property as it had planned through the threat that the reverter right would be exercised if the city used the property for anything other than something akin to a municipal building or park. Accordingly, the parties' dispute fundamentally concerns whether the city's proposed uses for the property fall within the scope of permissible "public purposes" as that

term is used in the public act governing the parties' respective rights relative to the property. An actual controversy between the parties exists, requiring judicial resolution to guide the parties' future conduct, because the parties disagree over the answer to that question—particularly the meaning of "public purposes" in 2010 PA 208. *UAW*, 295 Mich App at 495.

The first two letters exchanged between the city and the DTMB in late 2019 and 2020 evidence the parties' disagreement over this issue at that time. At the latest, it became necessary for judicial resolution of this controversy to guide the parties' conduct in March 2021 when the DTMB informed the city in a March 17 letter that the proposed uses did not constitute a public purpose under 2010 PA 208, that the proposed uses would thus trigger the reverter, and that the DTMB considered the matter "closed." This letter demonstrates that by that point, the parties' opposing positions were firmly set and that there was no room for further attempts to reach a mutual understanding on the matter. Accordingly, the particular claim now advanced by the city that it was being prevented from using the property as planned by the state's interpretation of the parties' respective rights under 2010 PA 208 accrued—at the latest—in March 2021. *Frank*, 500 Mich at 150. There is no evidence in the record that the city filed a compliant notice or claim within one year of that point as required by MCL 600.6431(1). Moreover, the city does not argue that it actually filed a notice or claim before April 2022 but instead argues that MCL 600.6431 does not apply because it did not sue "the state." As previously explained, the city's argument in that respect is incorrect. Because the city's claim accrued in March 2021 and it failed to timely file its notice or claim within one year as required by MCL 600.6431(1), the city's claim must be dismissed. *McCahan*, 492 Mich at 742, 743, 752; *Christie*, 511 Mich at 49-51.

Because the city's claim must be dismissed for failure to comply with the requirements of MCL 600.6431(1), *McCahan*, 492 Mich at 742, 743, 752, it is not necessary to determine whether the city's claim was also barred by the statutory limitations period in either MCL 600.6452(1) or MCL 600.5801(4) because there is no further relief that may be granted and the issue is therefore moot. An issue is deemed moot when "it presents only abstract questions of law that do not rest upon existing facts or rights" or "an event occurs that renders it impossible for a reviewing court to grant relief." *B P 7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117 (1998). "As a general rule, an appellate court will not decide moot issues." *Id*. For the same reason, there is no need to address defendants' laches argument and there is no reason to resolve whether the city's proposed uses constitute public purposes as contemplated by 2010 PA 208. *Id*.

The Court of Claims erred as a matter of law by concluding that the city's action was not barred by the failure to comply with MCL 600.6431(1). The Court of Claims' order is reversed, and we remand this matter for entry of summary disposition in favor of defedants. We do not retain further jurisdiction. No costs to either party, a public question being involved. *City of Bay City v Bay County Treasurer*, 292 Mich App 156, 172; 807 NW2d 892 (2011).

/s/ Stephen L. Borrello
/s/ Christopher M. Murray
/s/ Anica Letica

-14-